IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GREG ROSS | ) |
| | ) |
| v. | ) NO. 3-09-1196 |
| | ) JUDGE CAMPBELL |
| STATE FARM FIRE AND CASUALTY | ) |
| COMPANY | ) |

MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment (Docket No.12). For the reasons stated herein, Defendant's Motion is GRANTED.

FACTS

Plaintiff filed this action in the Chancery Court for Williamson County, Tennessee. Defendant removed the action to this Court on December 18, 2009, based upon diversity of citizenship. Docket No. 1. Plaintiff's Complaint alleges that Plaintiff was insured under a certain homeowners' policy with Defendant, covering property located in Franklin, Tennessee, and that, on or about January 3, 2008, the property suffered extensive water damage as a result of frozen and burst pipes. Docket No. 1. Plaintiff's original estimate of the loss was $99,819.38. Docket No. 19-2, ¶ 9. Defendant's estimate of the damage was $25,133.13. *Id*., ¶ 3.

Plaintiff contends that, when the parties were unable to agree as to the amount of the loss, Plaintiff invoked the appraisal clause of the policy, which provides:

> 4.  <u>Appraisal</u>. If you and we fail to agree on the amount of the loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we

> can ask a judge of a court of record in the state where the residence premises is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

Docket No. 19-2, ¶ 5.

Plaintiff selected Chuck Howarth as his appraiser, and Defendant selected David Horton. Docket No. 19-2, ¶¶ 4 and 6. Plaintiff's appraiser suggested Robert Martin to be the umpire, and Mr. Horton agreed. *Id*., ¶ 7. Plaintiff's appraiser's estimate of the amount of the loss was $93,818.32, and Defendant's appraiser's estimate was $8,604.11. *Id*., ¶¶ 8 and 11. Each party presented its appraisal to the umpire. *Id*., ¶ 10. There is no provision in the insurance contract requiring the appraisers to exchange appraisal packages. *Id*., ¶ 14.

After meeting with the two appraisers and inspecting the home, the umpire set the replacement cost of Plaintiff's loss at $32,095.17 and the actual cash value at $28,123.55. Docket No. 19-2, ¶¶ 15 and 16. Thereafter, Defendant's appraiser signed the appraisal award, fulfilling the contract provision that written agreement by two of the three would set the amount of the loss . *Id*., ¶ 17. In response to correspondence from Plaintiff's appraiser to the umpire, the umpire sent an e-mail to both appraisers, stating that nothing improper had occurred during the appraisal process. *Id*., ¶ 19; *see also* Docket No. 20-6.

Because Defendant had already paid Plaintiff an amount of $25,133.13 (Docket No. 19-2, ¶ 3), it determined that, once depreciation was applied to the umpire's award, Defendant had already paid Plaintiff more than the amount of the loss. *Id*., ¶ 20.

Plaintiff avers that Defendant breached the insurance contract because Defendant's appraiser, (Mr. Horton) acted as an advocate on behalf of Defendant; refused to present and discuss differences in appraisals with Plaintiff's appraiser; misinformed the umpire by using Balfour Construction Company whose work was incomplete and inadequate; refused to exchange his appraisal with Plaintiff's appraiser; and improperly influenced the umpire through *ex parte* communications and through directing the umpire's work procedures. Complaint, ¶ 18.

Plaintiff also alleges that Defendant breached the insurance contract because the umpire allowed himself to be improperly influenced by Defendant's appraiser and intentionally avoided or neglected a complete valuation of the loss. Complaint, ¶ 19. Plaintiff argues that the award rendered in this case was the product of overreaching, resulting in an award so grossly inadequate as to amount to fraud. *Id.*, ¶ 20. Finally, Plaintiff asserts that Defendant's actions, by and through its agent, Mr. Horton, violated the Tennessee Consumer Protection Act. *Id.*, ¶ 22.

## SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Pennington*, 553 F.3d at 450; *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986)).

## BREACH OF CONTRACT

Plaintiff contends that Defendant breached the contract of insurance through various actions of Defendant's appraiser and the parties' selected umpire. It is undisputed that the contract of insurance at issue is between Plaintiff and Defendant only.

Defendant has argued that Mr. Horton, its appraiser, was not Defendant's agent. Plaintiff disagrees. The Court will assume, for purposes of summary judgment, that there is at least a genuine issue of material fact as to whether Mr. Horton acted as an agent of Defendant in this case.

Plaintiff has not shown, however, that the umpire, suggested by Plaintiff's appraiser and jointly selected by the parties, was an agent of Defendant. Therefore, Defendant is entitled to summary judgment with regard to Plaintiff's claims alleging breach of contract by actions of the umpire. *See* Complaint, ¶ 19.

In response to Defendant's Motion, Plaintiff argues that Defendant breached the contract by failing to notify Plaintiff of its appraiser within twenty days of Plaintiff's written demand. Docket No. 19-1, pp. 6-7. Plaintiff did not allege this claim in his Complaint. Furthermore, Plaintiff has

not asserted that any delay in this notification caused him damage or invalidated the appraisal process. Therefore, this argument cannot be the basis for a breach of contract.

As noted above, Plaintiff contends that Defendant breached the contract because of various actions of its appraiser, Mr. Horton. Plaintiff and his appraiser object strongly to the manner in which Defendant's appraiser participated in the appraisal process. Those objections, however, do not evidence a breach of contract unless a specific provision of the insurance agreement is shown to have been violated. The Court finds that Plaintiff has not shown how this alleged misbehavior of Mr. Horton violates the insurance contract between Plaintiff and Defendant.

For example, Plaintiff alleges that Mr. Horton "held off" on his appraisal work for a time upon instruction from Defendant; yet Plaintiff points to no provision of the contract which would prohibit such instruction or require that there be no delays in Mr. Horton's actions.

Plaintiff argues that Mr. Horton requested umpire recommendations from Defendant's attorney and failed to provide disclosures to Plaintiff concerning the source of these recommendations; yet Plaintiff points to no provision of the contract which would prohibit Defendant's attorney from making umpire recommendations or require Defendant to disclose the source of those recommendations. More importantly, the umpire chosen by the parties was suggested by *Plaintiff*, not Defendant.

In addition, Plaintiff complains that Mr. Horton hired a contractor to help with his appraisal; yet nothing in the contract provisions cited by the parties prohibits such an action. Plaintiff also contends that Defendant's appraiser improperly failed to provide Plaintiff's appraiser with a copy of his estimate; yet it is undisputed that nothing in this contract requires the appraisers to provide copies to each other in this way.

Plaintiff avers that Defendant's appraiser improperly provided additional documents and commentary to the umpire with his appraisal package; yet Plaintiff has cited no provision of the contract which limits the contents of the appraisers' submissions to the umpire. Submitting an appraisal package is not an *ex parte* communication. Plaintiff's appraiser was not limited in what he could submit to the umpire either.

Plaintiff objects to the fact that Defendant's appraiser asked a question of the umpire after the umpire's appraisal award was made; yet, again, Plaintiff has cited nothing in the insurance contract that would prohibit such an inquiry. Indeed, Plaintiff's appraiser apparently made an inquiry of the umpire as well, because Plaintiff argues that Mr. Horton provided information and suggested wording to the umpire for answering that question. Plaintiff has not cited a contract provision which would prohibit the umpire from seeking and/or using information, or even suggested wording, from either or both selected appraisers.

Plaintiff contends that Defendant breached the contract because Mr. Horton refused to discuss the differences in the appraisals with Plaintiff's appraiser. The contract requires the appraisers to set the amount of the loss and, if they fail to agree on that amount, to submit their differences to the umpire. Although discussing the differences in their estimates may be advantageous, nothing in the contract requires such discussion, particularly with the third party umpire in place.

Plaintiff argues that Mr. Horton's actions violate "a number of written guidelines and seminars regarding the appraisal process." Docket No. 19-1, p. 9. Violating a number of written guidelines and seminars regarding the appraisal process is not necessarily, however, a breach of the contract between Plaintiff and Defendant. Plaintiff has not carried his burden of showing that the

third-party umpire was improperly influenced in any manner which would amount to a breach of the insurance contract.

Finally, the Court notes that the amount of loss set by the umpire was $32,095.17, clearly nowhere near the amount submitted by *either* appraiser. Specifically, the umpire's estimate was more than $23,000 more than the appraisal of Mr. Horton. The amount thus set by the umpire and ultimately agreed to by Defendant's appraiser, is reasonable and does not amount to fraud.

Because Plaintiff has failed to carry his burden of establishing a genuine issue of material fact as to whether the subject contract was breached, Defendant's Motion for Summary Judgment is granted on Plaintiff's breach of contract claim.

## TENNESSEE CONSUMER PROTECTION ACT

Plaintiff also alleges that Defendant's actions amount to a violation of the Tennessee Consumer Protection Act ("TCPA"). Under the TCPA, unfair and deceptive trade practices affecting the conduct of any trade or commerce constitute unlawful acts. Tenn. Code Ann. § 47-18-104(a). While the TCPA provides a list of various specific unfair and deceptive practices, none of which Plaintiff has identified as being violated in this case, the Act also contains a "catch-all" provision which states that engaging in any other act or practice which is deceptive to the consumer or to any other person is unlawful. Tenn. Code Ann. § 47-18-104(b)(27); *Fulton Bellows, LLC v. Federal Ins. Co.*, 662 F.Supp.2d 976, 997 (E.D. Tenn. 2009).

The Tennessee Supreme Court has held that this catch-all provision may apply to insurance companies and that the TCPA does not explicitly exempt insurance companies from its provisions. *Fulton Bellows*, 662 F.Supp.2d at 997. Courts have made it clear, however, that a mere denial of an insurance claim, absent any deceptive, misleading or unfair act does not violate the TCPA. *Id*.

Having found no breach of the insurance contract by Defendant, the Court also finds no deceptive, misleading or unfair act by Defendant in the appraisal process on Plaintiff's claim. Plaintiff's claim was not denied. The parties participated in the appraisal process outlined in their contract. Plaintiff was unhappy with the result, but there is no evidence that Defendant violated the Tennessee Consumer Protection Act. Thus, Defendant's Motion for Summary Judgment is granted on this issue.

## CONCLUSION

For all these reasons, Defendant's Motion for Summary Judgment (Docket No. 12) is GRANTED, and this action is DISMISSED.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE